**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | |
|---|---|
| Liberty Mutual Insurance Company, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER DENYING DEFENDANT'S MOTION** |
| vs. ) | **TO COMPEL ARBITRATION AND TO STAY** |
| ) | **THE LITIGATION** |
| Mandaree Public School ) | |
| District #36, ) | Case No. 4:06-cv-056 |
| ) | |
| Defendant. ) | |

Before the Court is the Defendant's Motion to Compel Arbitration and to Dismiss or Stay Litigation filed on September 22, 2006. For the reasons set forth below, the Motion to Compel Arbitration and the alternative Motion to Stay the Litigation are denied.

**I.     BACKGROUND**

On July 17, 2006, the plaintiff, Liberty Mutual Insurance Company (Liberty Mutual), filed a complaint seeking declaratory judgment against the defendant, Mandaree Public School District #36 (Mandaree). Liberty Mutual is a surety who issued a performance bond on a construction contract between Mandaree, the owner, and Tooz Construction, Inc. (Tooz Construction), the contractor. Liberty Mutual contends that Mandaree has discharged Liberty Mutual's obligations under the performance bond by failing to give the required notice, undertaking repairs, and depleting the contract balance prior to allowing Liberty Mutual to investigate Mandaree's claims of default by Tooz Construction. On September 22, 2006, Mandaree filed a motion to compel arbitration and stay the litigation, arguing that Liberty Mutual is obligated to arbitrate its claim under the performance bond because the bond expressly incorporated a binding arbitration clause in the underlying

construction contract. In the alternative, Mandaree contests that it is entitled to a discretionary stay of this lawsuit.

## II.     FACTS

On January 7, 2004, Mandaree entered into a construction contract with Tooz Construction for a school addition and remodeling project in the amount of $3,347,000. On January 16, 2004, Liberty Mutual, the surety, issued a performance bond for the project in the amount of $3,347,000. Paragraph 1 of the performance bond, executed using American Institute of Architects (AIA) document number A312, states:

> The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

See Docket No. 29-4. Paragraph 9 of the performance bond provides:

> Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation to sureties as a defense in the jurisdiction of the suit shall be applicable.

See Docket No. 29-4.

The construction contract was executed using Abbreviated Standard Form AIA document number A107-1997, which incorporated the supplementary contract conditions contained in AIA document A201-1997. Section 6.2 of the A107-1997 document provides:

> The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. <u>The contract Documents shall not be construed to create a contractual relationship of any kind</u> (1)

> between the Architect and Contractor, (2) between the Owner and a Subcontractor or sub-subcontractor, (3) between the Owner and Architect or (4) <u>between any persons or entities other than the Owner and Contractor</u>.

<u>See</u> Docket No. 29-2.  Section 4.6 of AIA document A201-1997 provides the arbitration clauses, and section 4.6.1 states:

> Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration.  Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5.

<u>See</u> Docket No. 29-6.  Section 4.6.4 of AIA document A201-1997 goes on to provide limitations on consolidation or joinder and states in pertinent part:

> No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration.  No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial.  Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a Claim not described therein or with a person or entity not name or described therein.  The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

<u>See</u> Docket No. 29-6.

On November 4, 2005, Tooz Construction filed a demand for arbitration.  Tooz Construction's claim was for $470,424.62 allegedly owed by Mandaree for work done under the construction contract.  <u>See</u> Docket No. 29-13.  On December 16, 2005, Mandaree filed an answer and counterclaim and alleged numerous claims including breach of contract for defective construction, unjust enrichment, fraud, and negligent misrepresentation.  On May 17, 2006,

Mandaree notified the American Arbitration Association (AAA) and Tooz Construction of its intent to file an amended counterclaim "to assert all of its claims against Liberty Mutual..." and add Liberty Mutual as a party to the arbitration. See Docket No. 33-3.

Mandaree asserts that Liberty Mutual first received notice on December 31, 2005, via a letter and a copy of Mandaree's answer and counterclaim filed with the AAA. See Docket No. 29-11. On May 19, 2006, Mandaree sent a letter to Liberty Mutual declaring Tooz Construction in default and demanding that Liberty Mutual, as surety for Tooz Construction, meet its obligations under the performance bond. See Docket No. 29-11. Liberty Mutual contends that the May 19, 2006, letter was its first notice of Mandaree's claims against Tooz Construction. See Docket No. 32. Included in the May 19, 2006, letter was the notice of an arbitration hearing between Mandaree and Tooz Construction scheduled before a single arbitrator on June 12-14, 2006, and notice that Mandaree was amending its arbitration claim to include Liberty Mutual as a party.

On May 23, 2006, Liberty Mutual responded to Mandaree's request to fulfill the obligations of the performance bond and asserted that Mandaree had failed to meet the prerequisites to initiating a bond claim as required in the bond contract. See Docket No. 29-11. Liberty Mutual also objected and withheld consent to being added as a party to the arbitration between Mandaree and Tooz Construction and expressly reserved all available rights and defenses. On May 30, 2006, the arbitrator denied Mandaree's request to amend its counterclaim to add Liberty Mutual as a party to the arbitration and stayed the arbitration indefinitely. See Docket No. 33-5.

On June 5, 2006, Mandaree gave written notice to Tooz Construction of its intention to hold the contractor in default. See Docket No. 29-10. Thereafter, Liberty Mutual arranged a project site inspection to be conducted June 15, 2006, and required the presence of the project engineer so that

4

a thorough review of Tooz Construction's alleged deficient work could be conducted.  See Docket No. 1-6.  On June 14, 2006, in a letter dated before the project inspection by Liberty Mutual, Mandaree indicated that the deficiencies at the project site needed to be corrected before the building would be usable and that Mandaree was prepared to award a contract for the corrective work.  See Docket No. 1-7.  Liberty Mutual contends that the letter dated June 14, 2006, was not received until June 30, 2006.

On June 27, 2006, Liberty Mutual sent a letter to the AAA in which it consented to become a party to the arbitration.  See Docket No. 29-14.  On June 30, 2006, Liberty Mutual contends that it received Mandaree's letter dated June 14, 2006, and notified Mandaree that if Mandaree unilaterally proceeded to hire a contractor to perform remedial work on the project, Mandaree would be considered to have forfeited all rights under the performance bond.  See Docket No. 1-8.  Liberty Mutual contends that Mandaree subsequently hired a contractor to perform the remedial work on the construction project.  See Docket No. 32.

On July 17, 2006, Liberty Mutual withdrew its consent to participate in arbitration citing Mandaree's efforts to remove the agreed-upon arbitrator, a change in the arbitration rules and procedures, and a failure to discharge the bond.  See Docket No. 29-15.  On July 17, 2006, Liberty Mutual also filed a lawsuit in federal court to determine whether the performance bond had been discharged.  See Docket No. 1.  On July 20, 2006, the AAA acknowledged Liberty Mutual's withdrawal of consent.  See Docket No. 33.

### III.     LEGAL DISCUSSION

#### A.     PERFORMANCE BOND PROVISIONS

The Federal Arbitration Act (FAA) makes all agreements to arbitrate "valid, irrevocable and enforceable." 9 U.S.C. § 2. The FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 648 (1986). State contract law governs whether an arbitration agreement exists or is valid. Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001).

The Eighth Circuit in Agrow Oils, LLC v. Nat'l Union Fire Ins. Co., 242 F.3d 777 (8th Cir. 2001), confronted the identical issue of whether a performance bond that incorporates an arbitration clause in a construction contract mandates arbitration of a claim on that bond between a surety and a bond owner. In Agrow Oils, the project owner, who alleged a default by the contractor, sued the surety and sought relief under the bond. Id. at 779-780. Several months later the contractor filed an arbitration claim against the owner, and the owner counterclaimed. The surety moved to stay the owner's lawsuit and argued that the owner was compelled to arbitrate its claim under the performance bond because the bond incorporated the arbitration clause in the underlying construction contract.

In Agrow Oils, the Eighth Circuit applied the FAA and North Dakota contract law and addressed the issue of whether an incorporation provision contained in a performance bond was ambiguous. The court found that the incorporation clause, identical to the incorporation clause

6

contained in the Liberty Mutual bond, was ambiguous because it did not clearly reflect an intent to arbitrate disputes between the owner and the surety. The court explained:

> [I]t is less clear that the incorporation clause reflected an intent by [the bond owner] and [the surety] to arbitrate their disputes under the bond - that intent is not clearly expressed, and it seems to be negated by the bond provision referring to the judicial resolution of disputes and by the provision in the Construction Contract that it 'not be construed to create a contractual relationship of any kind ... between any persons or entities other than [the owner and contractor].'

242 F.3d 777, 781.

Because of the absence of extrinsic evidence to determine the parties' intent, the Eighth Circuit turned to Section 9-07-12 of the North Dakota Century Code which provides that an ambiguous contract may be explained "by reference to the circumstances under which it was made and the matter to which it relates." Id. The court stated as follows:

> In general, a performance bond provides recourse to an obligee ([Mandaree]) against a secondary obligor ([Liberty Mutual], the surety) in the event the principal obligor ([Tooz Construction]) fails to perform the underlying obligation. See RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 1 (1996). In defending a claim on the bond, the surety may raise nearly all defenses available to the principal obligor, plus defenses unique to the surety, such as actions by the obligee that impair the surety's position or release the principal obligor. Id. §§ 34, 37-47. When the surety has performed the underlying obligation or has discharged the principal obligor by settling with the obligee, the surety usually has a right to be reimbursed by the principal obligor. Id. §§ 22-24.

Id.

The appellate court noted that case law from other jurisdictions "had expressly held that an incorporation clause in the bond gave either the surety, or the obligee making a claim on the bond, the right to arbitrate the bond claim, as well as to stay the pending court action." 242 F.3d 777, 782.

> But these cases do not discuss the significance of construing the incorporation clause as an express agreement to arbitrate between the obligee [owner] and the bonding company. The impact of such an agreement can be far-reaching. For example, it would permit the surety to compel arbitration of a claim on the bond when the

7

> principal obligor [contractor] is bankrupt or out of business, even though no party to the underlying contract wished to arbitrate performance issues.  <u>It would also permit the obligee to compel an unwilling surety to arbitrate its unique defenses, such as whether the obligee had impaired the surety's position or released the principal obligor.</u>  Mindful of the fundamental principle that "[a]rbitration under the [Federal Arbitration] Act is a matter of consent, not coercion," <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), we are unwilling to construe an incorporation clause whose obvious purpose was to clarify the extent of the surety's secondary obligation as also reflecting a mutual intent to compel arbitration of all disputes between the surety and the obligee under the bond.

<u>Id.</u> (emphasis added).

The Court finds the Eighth Circuit's decision in <u>Agrow Oils</u> to be on point and controlling. Liberty Mutual's performance bond contains the same provisions as the performance bond in <u>Agrow Oils</u>.  The Eighth Circuit refused to construe the performance bond to mandate arbitration between a surety and a party to the underlying construction contract, and even anticipated the situation here - that the obligee (Mandaree) could compel an unwilling surety (Liberty Mutual) to arbitrate regardless of whether the obligee may have impaired the surety's position.  After a careful review of Eighth Circuit case law, the Court holds that the incorporation clause in the performance bond at issue in this dispute does not mandate the surety to arbitrate.

### B. <u>CONSENT TO ARBITRATE</u>

Mandaree contends that because Liberty Mutual expressly consented to arbitrate on June 17, 2006, it may not withdraw its consent.  The Eighth Circuit has not specifically addressed the issue of whether a non-party to a written arbitration agreement may withdraw consent to join arbitration. Several circuits have refused to allow a party to withdraw consent to arbitrate where the party had executed a contract containing an arbitration clause.  See <u>Nationwide Mut. Ins. Co. v. Home Ins. Co.</u>, 429 F.3d 640, 649 (6th Cir. 2005) (holding that a party to a contract that mandated arbitration had

8

no contractual right to unilaterally withdraw its consent to the arbitration panel's authority based on one arbiter's allegedly deficient disclosures in absence of contractual language otherwise); <u>Great Western Mortgage Co. v. Peacock</u>, 110 F.3d 222, 225 (3rd Cir. 1997) (ignoring party's withholding of consent to arbitrate and holding that a party to employment arbitration contract is compelled to arbitrate).  However, these cases involved a party that had signed a construction contract which contained an arbitration clause and later attempted to revoke the consent to arbitrate.  In this case, Liberty Mutual was not contractually obligated to arbitrate.

On June 27, 2006, when Liberty Mutual voluntarily consented to join the Mandaree-Tooz Construction arbitration, Liberty Mutual was apparently unaware that Mandaree had chosen to enter into contracts to remedy the construction defects and to enter into such contracts prior to Liberty Mutual's on-site inspection.  Mandaree's intention to unilaterally proceed with the remedial construction work was brought to Liberty Mutual's attention by a letter dated June 14, 2006, but allegedly not delivered until two weeks later on June 30, 2006 - three days after Liberty Mutual had consented to be a party to arbitration.  Further, after Liberty Mutual consented to join in the arbitration proceedings, the arbitration was stayed as of May 30, 2006, and Mandaree allegedly removed the chosen arbitrator and requested a new panel of three arbitrators.

The Court is unaware of any evidence that Liberty Mutual withdrew its consent to arbitrate based on a suspicion that it would lose or in the face of an imminent arbitration decision.  Instead, Liberty Mutual withdrew its consent to arbitrate only after it apparently learned of Mandaree's intent to issue contracts for remedial construction work <u>and</u> after Mandaree allegedly changed the arbitration procedures by seeking to have the agreed-upon arbitrator removed and a new panel of three arbitrators appointed.  On October 13, 2006, a state district court stayed the Mandaree-Tooz

construction arbitration. As a result, there is no decision pending before an arbitrator or arbitration panel nor any indication that a new arbitration panel has been selected or that a new hearing date has been scheduled. The Court expressly finds that to allow Liberty Mutual to withdraw its consent to arbitrate neither delays judicial review nor frustrates the purposes of arbitration. After a thorough review of the record and relevant case law, and based upon the foregoing analysis, the Court finds that Liberty Mutual's withdrawal of consent to arbitrate was valid and that Liberty Mutual may not be compelled to arbitrate.

### C.     DISCRETIONARY STAY

Finally, Mandaree seeks a discretionary stay of Liberty Mutual's lawsuit in federal court pending completion of the arbitration proceedings between Mandaree and Tooz Construction. It is well-established that district courts have the power to stay litigation between a non-party and a party to an arbitration agreement "when the third party litigation involves common questions of fact that are within the scope of the arbitration agreement." Contracting NW, Inc. v. City of Fredericksburg, 713 F.2d 382, 387 (8th Cir. 1983); accord American Home Assurance Co. v. Vecco Concrete Constr. Co., 629 F.2d 961, 964 (4th Cir. 1980). In deciding whether to grant a discretionary stay, courts should consider judicial economy, avoidance of confusion, and possible inconsistent results.

The litigation between Liberty Mutual and the Mandaree Public School District arises out of the Mandaree-Tooz Construction dispute. The arbitration between Mandaree and Tooz Construction involves questions concerning Mandaree's nonpayment and allegations of Tooz Construction's failure to satisfy the terms and conditions of the construction contract by allegedly using non-conforming materials and failing to complete the project. The litigation between Liberty

Mutual and Mandaree involves questions concerning whether Mandaree breached its obligations under the performance bond by failing to provide timely notice and undertaking remedial construction work without adequately allowing Liberty Mutual to inspect the project.

After a careful review of the entire record, the Court finds that the litigation between Mandaree Public School District and Tooz Construction involves a multitude of issues, some which arguably overlap with issues presented in this declaratory judgment action. In a complex, multi-party dispute such as this, there are concerns of inconsistent rulings, and concerns over the extent to which the parties will be bound by the arbitrator's decision. However, in the exercise of its discretion, the Court finds that a discretionary stay is neither warranted nor appropriate, and that the interests of justice will best be served by proceeding with the federal declaratory judgment action. The declaratory judgment action, and the pending state court action and/or arbitration proceeding between Mandaree and Tooz Construction will, hopefully, resolve this dispute and the litany of issues that remain.

## IV.    CONCLUSION

For the reasons set forth above, the Defendant's Motion to Compel Arbitration and alternative Motion to Stay the Litigation are **DENIED**. (Docket No. 10). The Defendant's Motion for Hearing on its Motion to Compel Arbitration and Stay Litigation is **DENIED** as moot. (Docket No. 31).

**IT IS SO ORDERED**.

Dated this 23rd day of October, 2006

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court